**FILED**
**United States Court of Appeals**
**Tenth Circuit**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**February 14, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

---

SAVANAHA WORKS,

      Plaintiff - Appellee,

and

MISTY HARDEN; ROBERT HARDEN,
as guardians and next friends of Shaun
Smith, an incapacitated adult,

      Plaintiffs,

v.

TIMOTHY BYERS,

      Defendant - Appellant,

and

B.J. HEDGECOCK, Sheriff of Pushmataha
County, Oklahoma,

      Defendant.

No. 22-7054

---

**Appeal from the United States District Court**
**for the Eastern District of Oklahoma**
**(D.C. No. 6:19-CV-00379-EFM)**

---

Carson C. Smith, Pierce Couch Hendrickson Baysinger & Green, Oklahoma City,
Oklahoma (Seth D. Coldiron, Goolsby Proctor, Oklahoma City, Oklahoma, on the brief),
for Defendant-Appellant.

Devi M. Rao, Roderick & Solange, MacArthur Justice Center, Washington, DC (Robert M. Blakemore and Daniel E. Smolen, Smolen Roytman, Tulsa, Oklahoma, and Meghan Palmer, Roderick & Solange, MacArthur Justice Center, Washington, DC, with her on the brief), for Plaintiff-Appellee.

─────────────────────────

Before **MATHESON**, **EBEL**, and **CARSON**, Circuit Judges.

─────────────────────────

**CARSON**, Circuit Judge.

─────────────────────────

Whether sexual acts between a prison guard and an inmate violate the inmate's constitutional rights turns on the inmate's consent. Although the coercive nature of prison makes consent a difficult inquiry, we do not presume non-consent in our circuit. Plaintiff Savanaha Works brought a 42 U.S.C. § 1983 action claiming that Defendant Timothy Byers violated her Eighth Amendment right to be free from excessive force when he sexually assaulted her. The district court denied Byers' assertion of qualified immunity. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

I.

Works, formerly a prisoner incarcerated in Pushmataha County, Oklahoma jail, was designated by prison officials as a trustee—an inmate designated by the sheriff to perform work duties within the jail. Hallmark v. State, 795 P.2d 113, 114 (Okla. 1990). This status allowed her to enjoy greater freedom of movement than other inmates so she could perform work duties such as cooking and cleaning. Byers served as a detention officer during Works' incarceration.

2

After "lights out" on November 13, 2017, Byers went to Works' cell. Byers told Works to retrieve three extra-large jumpsuits from the laundry room even though Works was not the designated laundry trustee. Works and Byers entered the laundry room, where Works found the jumpsuits and gave them to Byers. Byers then asked Works to find a piece of paper.

While searching for the paper, Byers told Works to "drop them"—referring to Works' pants. Works responded, "What the explicit] you talking about?" Byers told Works again to "drop them." Works told Byers, "I don't think so." Byers again told Works to pull her pants down.

Works pulled her pants down. Byers told Works to bend over and touch her toes. Works told Byers, "You're [explicit] crazy." Byers again told Works to bend over and touch her toes, and Works complied. Byers inserted his finger or penis in Works' vagina. Byers said, "You're kind of dry." Works responded, "I don't want to do this." Byers pushed his finger or penis inside her four to five times. Works did not call out for help during the encounter. A security camera caught the incident on video.

An inmate shouted, "If you can hurry up and hit that [explicit]. We can all hear you." Byers told Works to pull her pants up and she did. Works returned to her cell and told her cellmate that "it wasn't cool what just happened."

Works brought a § 1983 action against Byers, alleging that Byers violated her Eighth and Fourteenth Amendment rights.[1]  Byers moved for summary judgment based on qualified immunity.  The district court denied the summary judgment motion.  Byers now appeals.

## II.

We review de novo a district court's denial of qualified immunity on summary judgment.  Brown v. Flowers, 974 F.3d 1178, 1181–82 (10th Cir. 2020) (quoting Thomson v. Salt Lake Cnty., 584 F.3d 1304, 1311 (10th Cir. 2009)).  But on interlocutory review of an order denying qualified immunity, we have limited jurisdiction and may only review "abstract issues of law."  Fancher v. Barrientos, 723 F.3d 1191, 1198 (10th Cir. 2013) (citing Johnson v. Jones, 515 U.S. 304, 317 (1995); Armijo ex rel. Chavez v. Wagon Mound Pub. Sch., 159 F.3d 1253, 1258 (10th Cir. 1998)).  We have jurisdiction to assess: "(1) whether the facts that the district court ruled a reasonable jury could find would suffice to show a legal violation" and "(2) whether that law was clearly established at the time of the alleged violation."  Estate of Valverde ex rel. Padilla v. Dodge, 967 F.3d 1049, 1058 (10th Cir. 2020) (quoting Roosevelt-Hennix v. Prickett, 717 F.3d 751, 753 (10th Cir. 2013)).  We cannot review a district court's factual findings, including the existence of a genuine

---

[1] The Eighth Amendment, not the Fourteenth Amendment, governs Works' claim because Works was a convicted inmate at the time of the alleged incident.  See Colbruno v. Kessler, 928 F.3d 1155, 1162 (10th Cir. 2019) (quoting Porro v. Barnes, 624 F.3d 1322, 1325–26 (10th Cir. 2010)).

issue of material fact or whether the plaintiff's evidence sufficiently supports a particular factual inference. Packard v. Budaj, 86 F.4th 859, 864 (10th Cir. 2023) (quoting Fogarty v. Gallegos, 523 F.3d 1147, 1154 (10th Cir. 2008)).

Even so, exceptions exist to this general rule. We may review the factual record de novo when (1) the district court fails to identify the particular conduct of the alleged constitutional violation, (2) the record blatantly contradicts the district court's factual finding, or (3) the district court committed legal error on the way to a factual determination. Sawyers v. Norton, 962 F.3d 1270, 1281 n.10 (10th Cir. 2020) (quoting Lewis v. Tripp, 604 F.3d 1221, 1225–26 (10th Cir. 2010); Pahls v. Thomas, 718 F.3d 1210, 1232 (10th Cir. 2013)).

III.

We first address whether we have jurisdiction to review the factual record de novo. Byers asserts that we should review the factual record de novo because the district court incorrectly placed the burden of proof on him when determining whether Works consented to the sexual act. Works contends that the district court did not err when finding she had not consented to the sexual act, so Works argues we lack jurisdiction to reconsider the district court's factual findings. We agree with Byers. The district court shifted the burden to Byers and, by doing so, legally erred

en route to its factual determination on consent. See Sawyers, 962 F.3d at 1281 n.10

(quoting Pahls, 718 F.3d at 1232). So we may review the factual record de novo.[2]

When a defendant claims qualified immunity at the summary judgment stage,

the plaintiff must show that a reasonable jury could find facts supporting a

constitutional violation. Estate of Booker v. Gomez, 745 F.3d 405, 411 (10th Cir.

2014) (citing Saucier v. Katz, 533 U.S. 194, 201–02 (2001); Riggins v. Goodman,

572 F.3d 1101, 1107 (10th Cir. 2009)). In sexual abuse cases, the plaintiff must

show that she did not consent to the sexual conduct to establish an Eighth

Amendment violation. See Graham v. Sheriff of Logan Cnty., 741 F.3d 1118, 1125–

26 (10th Cir. 2013). But rather than require Works to show that a reasonable jury

could find she did not consent to the sexual act, the district court placed the burden

on Byers to establish that Works consented to the sexual act. The district court

explained that the video and the discrepancies Byers identified are "a far cry from the

'overwhelming evidence of consent' which would entitle [Byers] to summary

judgment on the issue," signaling that to obtain summary judgment based on

qualified immunity, Byers needed to provide overwhelming evidence of consent.

The district court also found that it could not "determine, beyond a reasonable doubt,

that the sexual contact between Byers and Works was consensual"—once again

---

[2] Byers also argues that the video blatantly contradicted the record. Because we determined the district court erred in reaching its factual determination and review the factual record de novo, we need not reach this issue.

6

placing a heightened burden on Byers to establish consent.  In making these findings, the district court erred.

By shifting the burden and requiring Byers to produce "overwhelming evidence of consent" and by suggesting that it must find a lack of consent "beyond a reasonable doubt," the district court incorrectly applied the principles set forth in Graham, 741 F.3d at 1125–26.  There, we held that consensual sexual conduct between a guard and a prisoner does not rise to a constitutional violation.  Id.  We discussed the Ninth Circuit's presumption of non-consent.  Id. at 1125.  The Ninth Circuit created a rebuttable presumption of non-consent between guards and inmates and placed the burden on the guard to rebut the presumption through evidence that the sexual conduct "involved no coercive factors."  Id. (quoting Wood v. Beauclair, 692 F.3d 1041, 1049 (9th Cir. 2012)).  But after reviewing the presumption, we declined to adopt it.  Id. at 1125–26.  Thus, in this circuit, the burden remains on the plaintiff—not the defendant—to establish that sexual conduct is nonconsensual.

## IV.

We next turn to the qualified immunity analysis.  "Qualified immunity protects government officials from civil liability so long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Arnold v. City of Olathe, 35 F.4th 778, 788 (10th Cir. 2022) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)).  "The doctrine protects 'all but the plainly incompetent or those who knowingly violate the law.'"  Id. (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

Because we have jurisdiction to review the factual record de novo, we employ "the same legal standard applicable in the district court." Brown, 974 F.3d at 1181–82 (quoting Thomson, 584 F.3d at 1311). To prevail on a motion for summary judgment, the movant must establish that "no genuine issue as to any material fact" exists "and that the movant is entitled to a judgment as matter of law." Cronick v. Pryor, 99 F.4th 1262, 1267 (2024) (quoting Fed. R. Civ. P. 56(a)). But once the movant, often the defendant, asserts qualified immunity, the burden shifts to the plaintiff. Reavis ex rel. Coale v. Frost, 967 F.3d 978, 984 (10th Cir. 2020) (citing Perea v. Baca, 817 F.3d 1198, 1202 (10th Cir. 2016)). The plaintiff must show that (1) a reasonable jury could find facts supporting that the defendant violated his or her constitutional right and (2) that the right was clearly established at the time of the violation. Estate of Booker, 745 F.3d at 411 (quoting Cillo v. City of Greenwood Vill., 739 F.3d 451, 459 (10th Cir. 2013)). Although burden shifting occurs, we still view facts in the light most favorable to the nonmoving party. Brown, 974 F.3d at 1182 (quoting Henderson v. Glanz, 813 F.3d 938, 952 (10th Cir. 2015)). "In qualified immunity cases, this usually means adopting the plaintiff's version of the facts." Wise v. Caffey, 72 F.4th 1199, 1205 (10th Cir. 2023) (quoting Scott v. Harris, 550 U.S. 372, 378 (2007)); (citing Emmett v. Armstrong, 973 F.3d 1127, 1130 (10th Cir. 2020)).

We address whether, on the factual record before us, Works met her burden in demonstrating a constitutional violation and if so, whether the constitutional violation was clearly established.

A.

To satisfy her burden under the first prong of the qualified immunity analysis, Works must establish a constitutional violation based on facts a reasonable jury could accept as true.  See Brown, 974 F.3d at 1182 (quoting Henderson, 813 F.3d at 952).  Byers argues that Works has not met her burden in establishing a constitutional violation.  We disagree.

The Eighth Amendment states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. CONST. amend. VIII.  A guard's sexual abuse of an inmate rises to cruel and unusual punishment because sexual abuse "has no legitimate penological purpose, and is 'simply not part of the penalty that criminal offenders pay for their offenses against society.'"  Giron v. Corr. Corp. of Am., 191 F.3d 1281, 1290 (10th Cir. 1999) (quoting Boddie v. Schnieder, 105 F.3d 857, 861 (2d Cir. 1997)); Whitley v. Albers, 475 U.S. 312, 327 (1986) (holding that unnecessary and wanton infliction of pain constitutes cruel and unusual punishment).  We thus analyze sexual assault of an inmate as an excessive force claim, requiring the inmate to demonstrate (1) objectively harmful conduct to establish a constitutional violation and (2) the guard acted with a sufficiently culpable mental state.  Brown, 974 F.3d at 1182 (quoting Smith v. Cochran, 339 F.3d 1205, 1212 (10th Cir. 2003)).

As to the objective harm requirement, we have consistently held that a correctional officer's nonconsensual sexual abuse of a prisoner is objectively harmful enough to establish a violation of the Eighth Amendment.  Id. at 1186 (holding that

"physically forced nonconsensual sex" violates the Eight Amendment); see also, e.g., Giron, 191 F.3d at 1290 (holding that sexual abuse and rape by a guard violates the Constitution); Castillo v. Day, 790 F.3d 1013, 1020 (10th Cir. 2015) (acknowledging that "sexual abuse" by a guard violates the Constitution); Ullery v. Bradley, 949 F.3d 1282, 1291–92 (10th Cir. 2020) (holding that a guard pressing his genitals to an inmate's buttocks and grabbing the inmate's breast and crotch violates the Constitution). We do not require a "significant injury" to pursue an Eighth Amendment claim; instead, we focus our inquiry on the "nature of the force." Wilkins v. Gaddy, 559 U.S. 34, 37, 39 (2010) (citing Hudson v. McMillian, 503 U.S. 1, 7 (1992)). When a prison guard violates an inmate's bodily integrity, the nature of the force shows objective harm to the inmate and establishes a violation of her constitutional rights. See Barney v. Pulsipher, 143 F.3d 1299, 1310 (10th Cir. 1998) (quoting Hovater v. Robinson, 1 F.3d 1063, 1068 (10th Cir. 1993)).

Byers does not contest on appeal that a sexual act occurred with Works, and we conclude that inserting a finger or penis inside Works' vagina is a use of force that invades Works' bodily integrity. See id. Thus, Byers' sexual act without Works' consent is objectively harmful. The issue before us then is whether Works has established that a reasonable jury could find that she did not consent to the sexual act based on the record.

Works expressed her lack of consent when she rejected Byers' advances, said she didn't want to "do this," and told her cellmate that what just happened "wasn't

10

cool."  Works also presented evidence of coercion, which supports a lack of consent.[3]

Byers held a position of authority, and prisons have an "inherently coercive nature."

Brown, 974 F.3d at 1187.  Byers ordered Works out of her cell to the laundry room,

and Works discussed how she felt she could not leave because Byers physically

blocked the door.  Works also discussed that "whenever you're in a jail . . . they have

all the power over you.  They can do whatever they want."  So viewing the facts in a

light most favorable to Works, a reasonable jury could find Works experienced

nonconsensual sexual abuse.

Byers' decision to invoke his Fifth Amendment right against self-incrimination

is further evidence that Works did not consent.  We may weigh an adverse inference

against parties *in a civil action* "when they refuse to testify in response to probative

evidence offered against them," and we do so here.  Baxter v. Palmigiano, 425 U.S.

308, 318 (1976) (citing 8 J. Wigmore, Evidence in Trials at Common Law 439

(McNaughton rev. ed. 1961)) (holding that the Fifth Amendment does not forbid

---

[3] Byers contends that Works bears the burden to establish coercion.  This argument lacks merit because coercion is merely a part of our consent analysis—not a separate element a plaintiff must prove.  In Graham, 741 F.3d at 1126 (quoting Wood, 692 F.3d at 1047), we acknowledged that the "power dynamics between prisoners and guards make it difficult to discern consent from coercion," and that sexual abuse of an inmate requires "at least some form of coercion (not necessarily physical) by the prisoner's custodians."  But Graham's discussion on coercion centered on a prisoner's consent and whether to adopt the Ninth Circuit presumption of non-consent.  Id. at 1125–26 (discussing Wood, 692 F.3d at 1049); see also Brown, 974 F.3d at 1186 ("Graham's analysis considered the impact of nonphysical coercion on consent.").  We did not alter the burden placed on the plaintiff, but we also did not create a separate element of coercion for the plaintiff to establish.  The plaintiff still bears the burden to establish a nonconsensual sexual act, and the plaintiff may present evidence of coercion to establish lack of consent.

adverse inferences); Mackay v. DEA, 664 F.3d 808, 820 (10th Cir. 2011) (quoting

Baxter, 425 U.S. at 318) (same). Byers invoked his Fifth Amendment right when

faced with questions about evidence of Works' lack of consent. When asked if it is

true that Works said, "I don't want to do this" and that the sexual contact was

nonconsensual, Byers invoked his Fifth Amendment right. So, the adverse inference

also suggests that a reasonable jury could determine Works did not consent.

Byers argues that video evidence shows that Works consented to the sexual

act. But reviewing the video and other evidence in a light most favorable to the

plaintiff, we disagree. The video does not contradict Works' assertions that she did

not consent. Although Works does not scream for help or appear upset as she left the

laundry room in the video, Works explained that she felt scared and did not believe

that her fellow female inmates could help. After reviewing the evidence, including

the video, we conclude a reasonable jury could accept as true that Byers used

nonconsensual force to invade Works' bodily integrity. Thus, Works met her burden

in showing that Byers' conduct was objectively harmful.

We turn to the second requirement in establishing an excessive force claim and

conclude that Works met her burden in demonstrating that Byers acted with a

sufficiently culpable state of mind. A guard has a culpable state of mind if he uses

force "maliciously and sadistically for the very purpose of causing harm." Whitley,

475 U.S. at 320–21 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)).

"Where no legitimate penological purpose can be inferred from a prison employee's

alleged conduct, including but not limited to sexual abuse or rape, the conduct itself

constitutes sufficient evidence that force was used 'maliciously and sadistically for the very purpose of causing harm.'" Giron, 191 F.3d at 1290 (quoting Whitley, 475 U.S. at 320–21) (citing Boddie, 105 F.3d at 861)). Inserting a finger or penis into an inmate's vagina has no legitimate penological purpose, id., and for this reason, Works has shown that Byers had a sufficiently culpable state of mind to demonstrate he used excessive force in violation of the Eighth Amendment. Thus, she overcomes the first prong of qualified immunity in demonstrating that Byers' conduct, based on facts a reasonable jury could accept as true, violated her constitutional right.

## B.

To carry her burden on the second prong of our qualified immunity analysis, Works must show that Byers' constitutional misconduct violated her clearly established right. "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" Mullenix v. Luna, 577 U.S. 7, 11 (2015) (quoting Reichle v. Howards, 566 U.S. 658, 664 (2012)). "Constitutional rights are clearly established when Tenth Circuit or Supreme Court precedent *particularized to the case* at issue exists." Sanchez v. Guzman, 105 F.4th 1285, 1292 (10th Cir. 2024) (quoting Shepherd v. Robbins, 55 F.4th 810, 815 (10th Cir. 2022)). "We do not require a case directly on point," but we may not "define clearly established law at a high level of generality." Mullenix, 577 U.S. at 12 (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741–42 (2011)). Instead, controlling precedent that "encompasses 'materially similar conduct' or applies 'with obvious clarity' to the conduct at issue" clearly establishes

13

the right.  Shepherd, 55 F.4th at 815 (quoting Apodaca v. Raemisch, 864 F.3d 1071, 1076 (10th Cir. 2017)).

Works contends that the district court properly determined that the law was clearly established.  But Byers asserts that the district court erred in finding the law clearly established.  We conclude that on November 13, 2017, the law clearly established that a guard's nonconsensual sexual assault of an inmate, including inserting a finger or penis into an inmate's vagina, violates the inmate's Eighth Amendment right to be free from excessive force.

Our precedent clearly establishes that inserting a finger or penis into an inmate's vagina without her consent violates the inmate's constitutional rights.  In Smith v. Cochran, 339 F.3d 1205, 1209 (10th Cir. 2003), a state employee with prison guard duties threatened to report the inmate to prison officials unless she exposed herself, performed oral sex and had intercourse with him, and she obeyed.  We held that the law clearly established that a prison guard's sexual abuse of an inmate violated the Eighth Amendment.  Id. at 1215.  In Tafoya v. Salazar, 516 F.3d 912, 915–16 (10th Cir. 2008), a guard ordered an inmate out of her cell and sexually assaulted her, and we held that the sexual assault met the objective component of an Eighth Amendment violation.  In Barney, 143 F.3d at 1304–05, 1310, a guard ordered an inmate to an unmonitored area and sexually assaulted her, and this

conduct amounted to a constitutional violation.[4]  See also Castillo, 790 F.3d at 1020

(acknowledging that a prison guard's sexual abuse of an inmate is a constitutional

violation).  Additionally, in Brown, we held that the law clearly established on March

20, 2016, "that nonconsensual, coerced sex between a jailer and an inmate violates

the Constitution."[5]  974 F.3d at 1186 (citing Giron, 191 F.3d at 1290).  Finally, in

Ullery, 949 F.3d at 1294, 1301, we held that the law clearly established on August

11, 2015, that a guard's sexual abuse of an inmate, such as a guard forcefully

pressing his genitals towards an inmate's buttocks, touching an inmate's breast, and

groping an inmate's crotch, violates that inmate's Eighth Amendment rights.  We

---

[4] Although the defendants in Tafoya, Barney, and Castillo allegedly violated the plaintiff's constitutional right through deliberate indifference to the sexual assaults, in each case we held that the underlying sexual assault violated the inmate's constitutional right.

[5] Byers argues that Brown does not provide clearly established law because Brown does not clearly establish that "unmanifested subjective fear may form some coercion."  First, we disagree with Byers' representation of the facts.  The coercion that occurred here was not unmanifested subjective fear.  As discussed, Works presented evidence of both physical and non-physical coercion: Byers used his position of authority to coerce Works into the laundry room alone; he physically blocked the door, which prevented Works from exiting; and he demanded that she pull her pants down.  We have held also that prisons have an "inherently coercive nature," Brown, 974 F.3d at 1187, and Works testified about the coercive nature of this prison.  Works has shown, based on facts a reasonable jury could find as true, that nonconsensual, coerced sexual conduct occurred between Byers and Works on November 13, 2017.  Second, Byers mistakenly frames the constitutional violation as requiring proof of coercion.  Coercion is not a separate element.  Rather, we review evidence of coercion merely to determine an inmate's ability to consent.  Graham, 741 F.3d at 1125–26; Brown, 974 F.3d at 1186.  Our precedent and our sister circuits' precedent clearly established that a guard's nonconsensual sexual assault of an inmate violates the Constitution.  Ullery, 949 F.3d at 1294; Smith, 339 F.3d at 1215 (citing Barney, 143 F.3d at 1310; Hovater, 1 F.3d at 1068).

conclude that this precedent clearly establishes that Byers inserting his finger or penis inside Works' vagina without her consent violates Works' constitutional rights.

A reasonable official is on notice that a guard's nonconsensual sexual assault against an inmate would violate that inmate's constitutional rights.  Byers, therefore, violated a clearly established constitutional right, and Works overcomes the second prong of qualified immunity.

AFFIRMED.

22-7054, *Works v. Byers*

**MATHESON**, Circuit Judge, concurring:

I vote to affirm the district court's denial of qualified immunity to Mr. Byers.  My analysis on the constitutional violation prong of qualified immunity varies from the majority's, so I concur in the result on that issue.  I join the majority on the clearly established law prong.

On interlocutory review of a denial of qualified immunity, our jurisdiction is limited to questions of law—we may not review the district court's determination that there is "a genuine issue of material fact for a jury to decide."  *Fogarty v. Gallegos*, 523 F.3d 1147, 1154 (10th Cir. 2008); *see Sawyers v. Norton*, 962 F.3d 1270, 1275 (10th Cir. 2020).  But a district court's legal error en route to its factual determination opens the door to our de novo review of the factual record.  *Simpson v. Little*, 16 F.4th 1353, 1360 (10th Cir. 2021).  The majority invokes this exception.  It faults the district court for imposing the burden on Mr. Byers to show consent, citing *Graham v. Sheriff of Logan County*, 741 F.3d 1118 (10th Cir. 2013).  It then conducts a de novo review of the factual record and determines, as the district court did, that a reasonable jury could find that Ms. Works did not consent to sex with Mr. Byers.  I would not invoke the exception.

As explained below, the district court did not legally err in finding a genuine dispute of material fact, and *Graham* did not allocate the burden of proving nonconsent on the prisoner in a sex abuse case against a prison guard.

1. **No Legal Error**

  a. *District court opinion*

Unlike the majority, I do not discern legal error leading to the district court's determination that "a material issue of fact exists as to whether the sexual encounter between Byers and Works was consensual." App., Vol. VI at 742. Analyzing the record evidence—the partial video of the encounter and "Works' testimony that she did not consent," *id.* at 744—the court concluded that "[a] jury could rationally determine Works did not consent," *id.* at 742.

When a defendant moves for summary judgment seeking qualified immunity, the plaintiff must show "(1) a reasonable jury could find facts supporting a violation of a constitutional right, which (2) was clearly established at the time of the defendant's conduct." *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014). Here, the district court found that because "nonconsensual, coerced sex between a jailer and an inmate [clearly] violates the Constitution," and "[a]s there is some evidence the contact was not consensual, Defendant Byers is not entitled to qualified immunity." App., Vol. VI at 744-45 (quotations omitted).

  b. *Summary judgment standards*

The majority says the district court erred by placing the burden to show consent on Mr. Byers, but the district court properly applied summary judgment standards, including that a plaintiff need only show "a reasonable jury *could find* facts" supporting a clearly established constitutional violation. *Estate of Smart v. City of Wichita*, 951 F.3d 1161, 1169 (10th Cir. 2020) (emphasis added).

The Supreme Court outlined the summary judgment burden-shifting framework in *Celotex v. Corp. v. Catrett*, 477 U.S. 317 (1986).

First, the movant must show (1) the absence of a genuine issue of material fact and (2) entitlement to judgment as a matter of law. *Id.* at 323. A defendant moving for summary judgment based on qualified immunity satisfies the initial burden by asserting the qualified immunity defense. *Sawyers*, 962 F.3d at 1282; *Farmer v. Perrill*, 288 F.3d 1254, 1259 (10th Cir. 2002).

Second, if the movant meets this initial burden, the burden shifts to the nonmovant to show facts from which a reasonable jury could find for the nonmovant. *Celotex*, 477 U.S. at 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In the qualified immunity context, that requires showing that a reasonable jury could find facts supporting a violation of clearly established law. *Estate of Booker*, 745 F.3d at 411.

The movant continues to bear the ultimate burden of persuasion to show that no genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Farmer*, 288 F.3d at 1259; Jack H. Friedenthal et. al., *Civil Procedure* § 9.3 at 461 (6th ed. 2021).

The court, "view[ing] the evidence and the reasonable inferences to be drawn from the evidence in the light most favorable to the nonmoving party," *Schaffer v. Salt Lake City Corp.*, 814 F.3d 1151, 1155 (10th Cir. 2016) (quotations omitted); *see Tolan v. Cotton*, 572 U.S. 650, 655-56 (2014), must grant summary judgment only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

3

c.   *Standards properly applied*

Mr. Byers met his initial burden by asserting qualified immunity.  He also supported his motion with the video evidence and Ms. Works's deposition testimony. Ms. Works did not add to the record, but she met her burden by relying on the evidence that Mr. Byers presented.  She argued that the record evidence demonstrated "the sexual contact with Byers was unsolicited, unwanted and nonconsensual."  App., Vol. VI at 691. The district court, following proper summary judgment procedure, then determined a reasonable jury could agree.  *Id.* at 742-45.

The district court's reference to "overwhelming evidence of consent" did not, as the majority suggests, improperly allocate the burden of proof on consent to Mr. Byers. Maj. Op. at 7.  The court considered all of the evidence in making its factual determination.  And once the plaintiff has shown a genuine dispute of material fact, "[t]he defendant bears the normal summary judgment burden of showing no material facts that would defeat the qualified immunity defense remain in dispute."  *Farmer*, 288 F.3d at 1259; *see Puller v. Baca*, 781 F.3d 1190, 1196 (10th Cir. 2015); *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001); *Thompson v. City of Lawrence, Kan.*, 58 F.3d 1511, 1515 (10th Cir. 1995).

Responding to Mr. Byers's argument that "[t]he overwhelming record evidence unequivocally shows that Works consented," App., Vol. II at 93, the court said, "the video may provide some fodder for Defendant['s] claim of consent," but "it does not utterly

4

discredit Works' testimony that she did not consent." App., Vol. VI at 744.[1]  The court

properly considered whether, in light of the evidence of nonconsent, any countervailing

evidence was "so one-sided that one party must prevail as a matter of law." *Anderson*,

477 U.S. at 251-52.

The majority also faults the district court for saying that it was "unable to

determine, beyond a reasonable doubt, that the sexual contact between Byers and Works

was consensual." App., Vol. VI at 745.  Like the district court's reference to

"overwhelming evidence of consent," this was another way of saying that, given the

record evidence that "Works did not consent to sexual relations with Byers," *id.* at 743, a

genuine dispute of material fact precluded summary judgment.[2]

In sum, the district court reviewed the evidence, drew reasonable inferences in

Ms. Works's favor, held that "[a] jury could rationally determine Works did not consent,"

and denied qualified immunity based on "evidence the contact was not consensual." *Id.*

at 742-45.  The court did not legally err.  Its finding that a reasonable jury could find

---

[1] As the Supreme Court has explained, "[i]n qualified immunity cases," deciding whether a genuine dispute of material facts exists "usually means adopting . . . the plaintiff's version of the facts" unless the plaintiff's story "is so utterly discredited by the record that no reasonable jury could have believed him." *Scott v. Harris*, 550 U.S. 372, 378, 380 (2007).

[2] This court has used "reasonable doubt" to describe the movant's burden at summary judgment. *See, e.g.*, *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008); *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002); *Baker v. Bd. of Regents of State of Kan.*, 991 F.2d 628, 630 (10th Cir. 1993).

nonconsent is beyond our jurisdiction to review and was sufficient to deny qualified immunity.[3]

## 2. **Burden on Consent**

The majority reads *Graham* as holding that "the plaintiff must show that she did not consent to the sexual conduct to establish an Eighth Amendment violation." Maj. Op. at 6; *see id.* at 7 ("[I]n this circuit, the burden remains on the plaintiff—not the defendant—to establish that sexual conduct is nonconsensual.") This case does not require us to resolve this issue, and, in my view, *Graham* made no such holding.

In *Graham*, a prisoner alleged sexual assault against jail guards in violation of the Eighth Amendment. The court said, "Sexual abuse of a prisoner by a guard is generally analyzed as an excessive-force claim," which consists of (1) "an objective prong that asks if the alleged wrongdoing was objectively harmful" and (2) "a subjective prong under which the plaintiff must show that the officials acted with a sufficiently culpable state of mind." 741 F.3d at 1123 (quotations and citations omitted).

*Graham* affirmed summary judgment for the guards. After finding the prisoner indisputably consented to sex, *id.* at 1123-24, it said, due to the "overwhelming evidence of consent," the plaintiff's "focus on appeal is not on whether she consented as a factual

---

[3] Mr. Byers also argues, Aplt. Br. at 22-29, that we may review the district court's factual determination on nonconsent because it is "blatantly contradicted by the record." *Sawyers*, F.3d 962 at 1281 n.10 (quotations omitted). The majority does not reach this question because it invokes the legal-error exception to the limit on our interlocutory jurisdiction to review factual determinations. Maj. Op. at 6 n.3. My review of the record does not reveal a "blatant contradiction."

matter but on whether a prisoner can *legally* consent to sex with one of her custodians."
*Id.* at 1124.  The panel held as a legal matter that a prisoner may consent.  *Id.* at 1124-26.

The panel noted that the Sixth and Eighth Circuits had similarly held, some district courts had held that prisoner consent cannot happen in the prison setting, and the Ninth Circuit had taken "a middle ground," *id.* at 1124-25, adopting a rebuttable presumption of nonconsent that a prison official could rebut by showing "no coercive factors."  *Id.* at 1125 (quoting *Wood v. Beauclair*, 692 F.3d 1041, 1049 (9th Cir. 2012)).

Although *Graham* "agree[d] with the Ninth Circuit that '[t]he power dynamics between prisoners and guards make it difficult to discern consent from coercion,'" *id.* at 1126 (quoting *Wood*, 692 F.3d at 1047), it held that "[e]ven were we to adopt the same presumption as the Ninth Circuit, the presumption against consent would be overcome by the overwhelming evidence of consent" in the case.  *Id.*

The majority asserts that "after reviewing the [Ninth Circuit's] presumption," *Graham* "declined to adopt it."  Maj. Op. at 7.  But *Graham* did not reject it either— stating only that the plaintiff would lose "[e]ven were we to adopt the same presumption," because the evidence of her consent was "overwhelming."  741 F.3d at 1126.

*Graham* said, "the prisoner need prove only that the guard forced sex in order to show an Eighth Amendment violation," *id.* at 1123, and that the claim "require[s] at least some form of coercion (not necessarily physical) by the prisoner's custodians," *id.* at 1126, but the panel failed to explain what it meant by "forced sex" and "coercion" or how they relate to consent or the burden to prove consent.

7

In my view, *Graham* did not expressly allocate the burden on consent in a prisoner's § 1983 suit against a guard for sexual assault. *See Giron v. Corr. Corp. of Am.*, 191 F.3d 1281, 1287 (10th Cir. 1999) (not deciding whether the plaintiff or the defendant had the burden on consent at trial). If anything, when *Graham* referred to consent as "a defense to an Eighth Amendment claim based on sexual acts," 741 F.3d at 1124, it implied the prison guard must show consent. We have since said that "consent is a defense to a constitutional claim for sexual abuse." *Brown v. Flowers*, 974 F.3d 1178, 1186 (10th Cir. 2020) (citing *Graham*, 741 F.3d at 1125-26).

We should expressly resolve the burden question when it is squarely presented and we have the benefit of full briefing.

8